UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-80703-CIV-MARRA/MATTHEWMAN

PATRICK LEACH,

    Plaintiff,

vs.

DISTRICT BOARD OF TRUSTEES
OF PALM BEACH d/b/a PALM
BEACH STATE COLLEGE;
and CYNTHIA A. ARCHBOLD,

    Defendants.
_____/

## ORDER AND OPINION GRANTING MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant Cynthia Archbold's Motion to Dismiss [DE 15]. The Court has carefully considered the entire Court file and is otherwise fully advised in the premises.

## INTRODUCTION

Plaintiff Patrick Leach ("Plaintiff"), a former student at Palm Beach State College, has filed a seven count complaint against the District Board of Trustees of Palm Beach d/b/a Palm Beach State College, and his composition instructor Cynthia A. Archbold ("Archbold"). Plaintiff alleges that he has difficulty reading due to a disability,[1] and that therefore, the act of asking Plaintiff to read in front of the class

---

[1] Plaintiff alleges, verbatim, that he "has been diagnosed with Photophobia, an autoimmune disease by which he sustained trauma to his right eye[.] . . .[A]s a result[, Plaintiff's] right eye is extremely sensitive to light, [he] is required to wear protective sunglasses and [he] has great difficulty reading, especially small fonts and

constituted the intentional infliction of emotional distress as well as invasion of privacy.  Archbold asserts that Plaintiff fails to state adequately a claim for either tort for multiple reasons.

## LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

lettering.  Plaintiff does not have a left eye and thus is total[ly] blind on the left side."  Compl. ¶ 11.  Plaintiff had the assistance of a note taker in the class.  Compl. ¶¶ 21, 23.

misconduct alleged." *Id*.  Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 1950.  When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

## DISCUSSION

I.  **Intentional Infliction of Emotional Distress**

In Count IV, Plaintiff alleges that on Wednesday, February 24, 2016, during her composition class in front of 20 or more students, Archbold intentionally or recklessly requested that Plaintiff read aloud to his classmates when she knew of his disability or should have known that Plaintiff could not perform the requested task of reading and that emotional distress would likely result.  Compl. ¶ 66.  It is further alleged that Archbold intentionally or recklessly responded to Plaintiff in such a manner as to force Plaintiff to disclose his disability to his classmates when Archbold knew or should have know that emotional distress would likely result.  Compl. ¶ 67.  Plaintiff then asserts that on Monday, February 29, 2016, Archbold again intentionally or recklessly requested that Plaintiff read aloud in class when Archbold knew of Plaintiff's disability and knew or should have known Plaintiff could not perform the requested task of reading and that emotional distress would likely result.  Compl. ¶ 68.  On Wednesday, March 16, 2016, Plaintiff claims that during the class, Archbold intentionally and recklessly requested that Plaintiff recite an essay which was typed

in fine print when Archbold knew of Plaintiff's disability and knew or should have known Plaintiff could not perform the requested task of reading and that emotional distress would likely result.  Compl. ¶ 69.  Subsequently during that class, after Plaintiff did not read the essay as instructed, Archbold intentionally and recklessly stated to Plaintiff, "I am trying to give you an equal opportunity to participate in this class," in front of a giggling audience of students when Archbold knew of Plaintiff's disability and knew or should have known Plaintiff could not perform the requested task of reading and that emotional distress would likely result.  Compl. ¶ 70.  Plaintiff alleges feeling severe emotional distress, humiliation and embarrassment due to Archbold's conduct.  Compl. ¶¶ 25, 73.

Under Florida law, to state a claim for intentional infliction of emotional distress, the following four elements must be shown: (1) extreme and outrageous conduct; (2) an intent to cause, or reckless disregard to the probability of causing, emotional distress; (3) severe emotional distress suffered by the plaintiff; and (4) that the conduct complained of caused the plaintiff's severe emotional distress.  *Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir.), *cert. denied*, 498 U.S. 980 (1990).  In *Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277 (Fla. 1985), the Florida Supreme Court recognized the tort of intentional infliction of emotional distress, and adopted the standard of § 46, Restatement (Second) of Torts as the appropriate benchmark for the cause of action.  *Id*. at 278–79.  The comment to § 46 adds the following to this definition:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Metropolitan Life*, 467 So.2d at 278–79 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). The question of what constitutes outrageous conduct is judged by an objective test. *Id*. Moreover, the issue is ordinarily one of law to be resolved by the court, rather than a question of fact to be resolved by a jury. *Metropolitan Life*, 467 So.2d at 279; *Dependable Life Ins. Co. v. Harris*, 510 So.2d 985, 988 (Fla. Dist. Ct. App. 1987).

Florida courts have construed the parameters of this cause of action extremely narrowly. Whether a claim for intentional infliction of emotional distress will be held is highly dependent on the allegations in the particular case. *Gillis v. Sports Authority, Inc.*, 123 F. Supp. 2d 611, 616 (S.D. Fla. 2000). In *Doe v. Board of County Commissioners, Palm Beach County, Florida*, 815 F.Supp. 1448, 1450 (S.D. Fla. 1992), the court held that where a plaintiff alleges a handicap, the Restatement specifically provides that outrageous conduct:

> may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know.

*Id*. at 1450. In *Doe*, the Court found that the plaintiff had sufficiently stated a claim

for intentional infliction of emotional distress because she alleged that her supervisor knew of her mental handicap, harassed plaintiff for absences caused by the handicap, harassed plaintiff for tardiness that resulted from treatment necessary for the handicap; and, maliciously pestered Doe with intrusive questions about the nature and extent of the handicap. *Id*. The plaintiff further alleged that her supervisor's conduct was "outrageous" and that such conduct caused her to suffer severe emotional distress. The Court held that absent plaintiff's mental handicap, the defendant's alleged harassment and pestering of plaintiff would not qualify as extreme and outrageous conduct in a work environment. *Id*.

In this case, Plaintiff alleges that Archbold asked him to read aloud in a college course on multiple occasions despite knowing that Plaintiff suffered from a visual disability. Compl. ¶¶ 66-69. Plaintiff also alleges that Archbold's conduct forced Plaintiff to disclose his disability to his classmates. Compl. ¶ 67. Finally, Plaintiff alleges that Archbold stated that she was trying to give Plaintiff an equal opportunity to participate in the class. Compl. ¶ 70. Plaintiff claims that these acts, when Archbold knew he suffered from a visual disability, was outrageous beyond all bounds of decency.

Plaintiffs' complaint, taken as true and viewed in the light most favorable to Plaintiff, does not allege "outrageous" conduct sufficient to state a claim for intentional infliction of emotional distress against Archbold. The facts as a matter of law are not so outrageous in character, and so extreme in degree, as to go beyond all

possible bounds of decency.  *Bilbrey v. Myers*, 91 So.3d 887, 892 (Fla. Dist. Ct. App. 2012) (affirming dismissal of claim for intentional infliction of emotional distress based on allegations that over an almost-two-year-period, defendant repeatedly and falsely told various people that plaintiff was a homosexual with an immoral character, and tried to break up his relationship with his fiancé).  Therefore, because the conduct alleged by Plaintiff does not rise to the level necessary to support a claim for intentional infliction of emotional distress, Count IV fails to satisfy Rule 8(a) and is dismissed.  *Haberski v. Bufano,* 2017 WL 661546, at *9 (S.D. Fla. Feb. 17, 2017); *Khan v. BankUnited, Inc.*, 2017 WL 111604, at *2 (M.D. Fla. Jan. 11, 2017).  The Court concludes that leave to amend this claim would be futile, hence the claim for intentional infliction of emotional distress is dismissed with prejudice.

II.    <u>Invasion of Privacy - Public Disclosure of Private Facts</u>

In Count VI, Plaintiff alleges that Archbold published a private fact (Plaintiff's visual disability) to a class "of 20 or more" college students.  Compl. ¶ 22.  Archbold argues that Plaintiff's claim against her for public disclosure of a private fact must fail because she did not publish the fact to enough people.  Plaintiff responds that publishing to even one person is enough to satisfy the "publish" element of the claim.

Florida has adopted the Restatement's test of invasion of privacy based on publication of private facts.  *Cape Publ'ns, Inc. v. Hitchner*, 549 So.2d 1374 (Fla. 1989).  To state a public disclosure of private facts claim, a plaintiff must allege (1) the publication, (2) of private facts, (3) that are offensive, and (4) are not of public

concern.  *Id*. at 1377; *Pierre-Paul v. ESPN Inc.*, 2016 WL 4530884, at *1 (S.D. Fla. 2016).

**Publication**

The publicity given to the private fact must be more than mere publication. The fact must be made public by communicating it to the public at large or to so many people that the matter *must be regarded as substantially certain to become one of public knowledge*.  Restatement (Second) of Torts § 652D cmt. a (1977) (emphasis added).  The difference is not one of the means of communication, which may be oral, written or by any other means.  It is one of a communication that reaches, or is sure to reach, the public.  "Thus it is not an invasion of the right of privacy . . . to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons.  On the other hand, any publication in a newspaper or a magazine, even of small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or statement made in an address to a large audience, is sufficient to give publicity within the meaning of the term . . .  The distinction, in other words, is one between private and public communication." *Id*.

There is no precise number that constitutes a large number of persons, and the facts and circumstances of each case must be taken into consideration in determining whether the disclosure was sufficiently public to support an invasion of privacy claim. 9 American Law of Torts § 30:31, Situations in Which Recovery Has Been Denied -

Published Matter Disseminated to Few or Limited Number of Persons.  In *Lewis v. Snap-on Tools Corp.*, 708 F.Supp. 1260, 1261-62 (M.D. Fla. 1989), a dealer sued a manufacturer for invasion of privacy, alleging, among other things, that the defendant told the plaintiff's customers that the plaintiff was stealing their payments and told other dealers that the plaintiff was a bad influence.  The court granted the defendant's motion to dismiss, stating that the mere conclusory allegation that the alleged disclosure was to large numbers of persons did not meet the requirement for the cause of action that the publication be to the general public in such a manner as to be outrageous and certain to become public knowledge.  The court added that the plaintiff's complaint did not sufficiently allege the disclosure of private facts.  *Id*.

In this case, it is alleged that in front of a class of "20 or more students," Archbold three times asked Plaintiff to read aloud when he could not because of his visual disability, that she responded to Plaintiff in such a manner as to force him to disclose his disability to his classmates, and that she stated in front of the class, "I am trying to give you an equal opportunity to participate in this class."  There are no allegations that Plaintiff's visual disability was made known to the general public, or to so many people that it was substantially certain that his disability would become public knowledge.

In *Dancy v. Fina Oil & Chemical Co.*, 3 F. Supp. 2d 737 (E.D. Tex. 1997), a jurisdiction that also follows the Restatement (Second) of Torts, an employer's alleged conduct in publishing a list of employees with excessive absences did not

constitute an actionable invasion of privacy, since the alleged facts were made known only to some other employees, not to the general public, and the fact of absenteeism could be gleaned by casual observation.  See also, *Bilbrey v. Myers*, 91 So.3d 887, 892 (Fla. Dist. Ct. App. 2012) (affirming dismissal of invasion of privacy tort because disclosure of plaintiff's sexual orientation did not establish enough publicity because the disclosure was only made to members of church); *Eddy v. Brown*, 715 P.2d 74 (Okla. 1986) (disclosure to limited number of co-workers that plaintiff was undergoing psychiatric treatment was not publication); *Wells v. Thomas*, 569 F.Supp. 426, 437 (E.D. Pa. 1993) (publication to community of employees at staff meetings is not "publication" required by invasion of privacy cases).

Plaintiff does not disagree that the disclosure must be made public, but relies upon *Williams v. City of Minneola*, which states that "a defendant may become liable through revealing the matter to only one person, from whom the information predictably goes to many - as in *Beaumont v. Brown*, 401 Mich. 80, 257 N.W.2d 522 (Mich. 1977) . . ."[2]  575 So.2d 683, 689 (Fla. Dist. Ct. App. 1991).

---

[2] In *Beaumont*, the Michigan Supreme Court discussed the "Invasion of Privacy in Michigan and Elsewhere." *Beaumont*, 401 Mich. at 93-95.  Later, in *Bradley v. Saranac Community Schools Bd. of Educ.*, 455 Mich. 285 (1997), the Michigan Supreme Court considered "whether the personnel records of public school teachers and administrators are exempt from disclosure under [Michigan's] Freedom of Information Act[,]" and held that "the requested records must be disclosed because they are public records and are not within any exemption under the FOIA." *Bradley*, 455 Mich. at 288-289.  In so doing, the Court overruled *Beaumont* to the extent it conflicted with the FOIA.  *Bradley*, 455 Mich. at 302.

In *Beaumont*, a former employee of the Department of Labor brought an action against the director and the personnel director of the Department of Labor seeking to recover for the alleged invasion of privacy based upon derogatory statements in a letter written by the personnel director to the army reserve, allegedly resulting in the plaintiff being subjected to military review.  The Michigan Supreme Court held that summary judgment for defendants was precluded by the existence of genuine issues of material fact as to whether embarrassing private facts about plaintiff were involved and whether there was public disclosure made through the letter being passed through many hands in the army bureaucracy and being unnecessarily or unreasonably included in a Civil Service Commission transcript of the case against plaintiff.

The facts of *Beaumont* are inapposite to the situation presented in the instant matter.  There is no allegation that Plaintiff's disability was revealed to persons from "whom the information predictably goes to many."  Plaintiff argues in response to the motion to dismiss that publication to 20 or more college students is sufficient to allege publication to the public at large because college students regularly engage in social media such as Facebook and Twitter.  However, Plaintiff does not allege that any of the students dispersed his allegedly private information on social media, or that they were likely to do so.  The allegation that Plaintiff's visual impairment was disclosed only to the students in the class, as a matter of law, fails to meet the threshold for publication, as such a disclosure is not "substantially certain to become

public knowledge." *Bilbrey v. Myers*, 91 So.3d 887, 892 (Fla. Dist. Ct. App. 2012).[3]

## CONCLUSION

Even when viewing the evidence in the light most favorable to Plaintiff, it is clear Plaintiff has failed to state an actionable claim for invasion of privacy against Archbold. Therefore, it is hereby

**ORDERED AND ADJUDGED** that Defendant Cynthia Archbold's Motion to Dismiss [DE 15] is granted. Count IV is dismissed with prejudice as any amendment to the claim of intentional infliction of emotional distress would be futile. Count V is dismissed without prejudice with leave to amend if Plaintiff can allege facts to support the conclusion that his visual disability was communicated by Archbold to the public at large or to so many people that the matter must be regarded as

---

[3] The Court notes that the dialogue alleged in the Complaint does not demonstrate that Archbold's alleged statements disclosed any facts about Plaintiff's disability. Moreover, even if the interaction between Plaintiff and Archbold could be considered to disclose Plaintiff's disability, it is questionable whether this interaction would be considered to invade Plaintiff's privacy in a manner that a reasonable person would consider highly offensive. When intimate details of a person's life (for example, sexual relations, or humiliating illnesses, or the most intimate personal letters) "are spread before the public gaze in a manner highly offensive to the ordinary reasonable man, there is an actionable invasion of his privacy, unless the matter is one of legitimate public interest." Restatement (Second) of Torts § 652D cmt. b (1977). The Court also questions whether Plaintiff's disability would be considered a private fact given that he was blind in one eye, wore protective eye wear, and had a personal note taker. Compl. ¶¶ 11, 21, 23. "[T]here is no liability for giving further publicity to what the plaintiff himself leaves open to the public eye . . . ." Restatement (Second) of Torts § 652D cmt. b (1977).

substantially certain to become one of public knowledge.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 24th day of March, 2017.

_____
KENNETH A. MARRA
United States District Judge